E-FILED
Friday, 16 February, 2018  02:42:05 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

JANE DOE; and
JANE ROE, by and through her
next friend JULIE ROE;

      Plaintiffs,

Honorable

v

Case No.

MACOMB COMMUNITY UNIT SCHOOL
DISTRICT NO. 185; BOARD OF EDUCATION
OF MACOMB COMMUNITY UNIT SCHOOL
DISTRICT NO. 185; JOHN RUMLEY,
Individually and as an Agent of MACOMB
COMMUNITY UNIT SCHOOL DISTRICT
NO. 185; and ED FULKERSON, Individually and as
an Agent of MACOMB COMMUNITY UNIT
SCHOOL DISTRICT NO. 185;

      Defendants.

_____

## COMPLAINT AND JURY DEMAND

### INTRODUCTION

1.      From 2014 to 2017, Defendants harbored and protected a known repeat sexual

predator, student M.P., the son of a teacher at Macomb Senior High School ("MSHS") in

Macomb, Illinois.[1]  Defendants received multiple credible reports that M.P. sexually harassed,

assaulted, and violently penetrated Plaintiff Jane Doe, and, two years later, Plaintiff Jane Roe,

yet Defendants allowed M.P. to attend school without discipline or restriction; refused to enforce

civil no contact orders issued against M.P.; and left Plaintiffs, both freshmen students at the time

of the sexual abuse, to protect themselves from continued sexual harassment and violence at

_____

[1] For purposes of this Complaint, the then-minor male perpetrator is referred to as "M.P.," which
does not reveal his true initials, in compliance Fed. R. Civ. P. 5.2(a) requiring the protection of a
minor person's identity in public court filings.

MSHS.  Defendants effectively forced Plaintiffs to leave MSHS in order to escape the school's hostile and discriminatory educational environment.

2.      In early 2014, M.P. sexually harassed fellow freshman Jane Doe by repeatedly slapping her buttocks, grabbing her breasts, and following her at MSHS.  Defendants ignored Jane Doe's and her mother's *four separate reports* of M.P.'s continuing serial harassment, battery, and stalking.  Defendant John Rumley, Principal of MSHS, told Jane Doe, "guys are going to do what guys are going to do."

3.      M.P.'s sexual misconduct, gone unchecked by school officials, then escalated.  He followed Jane Doe into the school band room, restrained her, shoved his hand down her pants, and penetrated her vagina with his finger, while Jane cried and tried to escape.  Defendants learned of M.P.'s finger rape of Jane Doe, yet still failed to investigate, refused to comply with Jane Doe's civil no contact order issued against M.P., did not discipline or increase supervision of M.P., and failed to take any step to prevent his further harassment and violence against Jane Doe.  Defendant Fulkerson, Assistant Principal of MSHS, told Jane Doe's mother the situation was Jane's fault, and he would not disrupt his school for "girls that accuse people of things."

4.      In fall 2016, M.P., then a 17-year-old senior at MSHS, sexually battered *another* female student, Jane Roe, who at the time was a 14-year-old freshman and new to the school.  M.P. isolated Jane Roe in the school auto shop, pushed her against a car, and forcibly raped her with his finger, against her will and without her consent.  A few weeks later, he encountered Jane Roe at a public park in Macomb, and he grasped her by the neck, fondled her breasts, touched her thighs, and attempted to kiss her, all of which was captured on video by a nearby security camera.  Jane Roe begged him to stop and managed to get away.

2

5. Just as Defendants failed Jane Doe, they also failed Jane Roe. The sole step Defendants took to supposedly "investigate" Jane Roe's report of M.P.'s sexual harassment was to review school video taken outside of the auto shop, which they discounted because they determined Jane was not forced to enter the room and was in the auto shop with M.P. for "only" a little over two minutes, apparently failing to understand that sexual violence can easily occur in under two minutes. Defendants failed to inform Jane Roe or her mother, Julie Roe, that previous reports had been made regarding M.P.'s sexual harassment against another female student. Defendants also refused to enforce a civil no contact order that prohibited M.P. from entering MSHS when Jane Roe was there, and they took no steps to protect Jane Roe, despite knowing of M.P.'s previous reported harassment, battery, and violence against Jane Doe and that criminal charges were filed against him for his sexual abuse against Jane Roe. Defendant Fulkerson told Julie Roe that she should keep her daughter at home while M.P. was at school.

6. Defendants' many failures, along with their retaliation against Plaintiffs for reporting M.P.'s sexual abuse and violence, caused both Jane Doe and Jane Roe to transfer to the local "alternative" school that offered fewer classes, provided no live classroom interaction with teachers or other students, and where there were no extracurricular activities or clubs, and to sacrifice many educational opportunities and benefits. Jane Doe and her family moved out of Macomb to escape the hostile environment of the school district and community. Defendants refused Jane Roe's request to return to MSHS or participate in MSHS extracurricular activities and student clubs, and she remains at the alternative school. Jane Roe had a Section 504 Student Accommodation at MSHS, which is unavailable at the alternative school. Both Plaintiffs have suffered great emotional and psychological harm and have been hospitalized due to Defendants' callous indifference and discrimination.

3

7.      Plaintiffs seek recovery for the significant damages they have suffered as a result of Defendants' violations of the Educational Amendments of 1972 (Title IX), 20 U.S.C. § 1681, *et seq*.; federal rights; equal protection rights under the 14th Amendment to the U.S. Constitution, pursuant to 42 U.S.C. § 1983; and state law described in this Complaint.

## JURISDICTION

8.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this litigation involves matters of federal law, specifically claims made under the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681 *et seq.*, and claims for deprivation of civil rights under 42 U.S.C. § 1983 and the United States Constitution.

9.      This Court also has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1343(a)(3) & (4) because this litigation involves claims for deprivation of civil rights under 42 U.S.C. § 1983.

10.     This Court has supplemental jurisdiction over the state law claims alleged herein pursuant to 28 U.S.C. § 1367, as they form part of the same case or controversy stemming from the allegations that form the basis of the federal claims in this action.

11.     Venue in this District is proper pursuant to 28 U.S.C. § 1391, as all of the relevant facts giving rise to this case and damages sustained by Plaintiffs occurred in this District.

## PARTIES

12.     Plaintiff Jane Doe is a former MSHS student.  At the time she suffered M.P.'s sexual harassment and abuse and sex discrimination at MSHS, she was a minor and a resident of McDonough County, Illinois.  She is now an 18-year-old resident of Marshall County, Iowa. This Complaint is filed prior to Jane Doe's 19th birthday, and thereby is filed within the applicable statute of limitations.

13.     Plaintiff Jane Roe is a former MSHS student.  She is a minor and resident of McDonough County, Illinois.

14.     Julie Roe is the mother and next friend of Jane Roe.  She is a resident of McDonough County, Illinois.

15.     Defendant Macomb Community Unit School District No. 185 ("School District") is a recipient of federal funds within the meaning of 20 U.S.C. § 1681(a).  The School District geographically lies within McDonough County, Illinois, and approximately 2,100 students attend schools within the School District, including MSHS.

16.     Defendant Board of Education of Macomb Community Unit School District No. 185 ("School Board") governs and operates Defendant School District and has the authority to adopt, enforce, and monitor all policies for the management and governance of the District's schools, including MSHS.

17.     Defendants School District and School Board are collectively referred to herein as "School Defendants."

18.     Defendant John Rumley by information and belief is a resident of McDonough County, Illinois.  At all times relevant to this Complaint, Defendant Rumley was the Principal of MSHS, employed by and in the course and scope of his employment with School Defendants.

19.     Defendant Ed Fulkerson by information and belief is a resident of McDonough County, Illinois.  At all times relevant to this Complaint, Defendant Fulkerson was the Assistant Principal of MSHS, employed by and in the course and scope of his employment with School Defendants.

5

## FACTUAL ALLEGATIONS

### *School Defendants Ignored Reports of M.P.'s Sexual Harassment against Jane Doe*

20.     Jane Doe was a freshman student at MSHS during the 2013-2014 academic year.

21.     M.P. also was a freshman student at MSHS during the 2013-2014 academic year.

22.     M.P.'s parent was employed by School Defendants as a teacher at MSHS at all times relevant to this Complaint.

23.     M.P. sexually harassed Jane Doe at MSHS on approximately 20 occasions, including by slapping her buttocks, grabbing her breasts, and stalking her throughout the school. M.P. warned Jane Doe that she should not tell anyone about his misconduct.

24.     In March or April 2014, Jane Doe, then 15-years-old, reported to Defendant Rumley and an MSHS counselor that M.P. was sexually harassing her at school, had touched her buttocks and breasts, was following her, and made her feel very uncomfortable.  Defendants ignored her report, and M.P. continued to sexually harass and batter Jane Doe.  Jane reported the harassment two more times to school officials, who did nothing.

25.     Defendant Rumley dismissed Jane Doe's reports by telling her, "guys are going to do what guys are going to do."

26.     Jane Doe's mother noticed that her daughter was social withdrawn and distraught, and Jane told her mother about M.P.'s harassment and abuse.

27.     In April 2014, Jane Doe's mother spoke to Defendant Rumley and reported to him that M.P. was sexually harassing and abusing her daughter.  Defendant Rumley assured her the problem would be "monitored."

28.     However, Defendants did not investigate the reports of M.P.'s sexual harassment and assaults against Jane Doe, institute any disciplinary measures against M.P., or take any steps to protect Jane.

### *M.P.'s Sexual Harassment and Battery Escalated against Jane Doe*

29.     Approximately one week after Jane's mother had reported M.P.'s sexual harassment against Jane Doe to Defendant Rumley, and Defendants did nothing to discipline, monitor, or supervise M.P., he violently sexually penetrated Jane Doe on school property.

30.     M.P. followed Jane Doe into the school band room, where they were alone, grabbed Jane's arm, and pinned her against the wall.  He tried to kiss Jane, and she told him to stop.  M.P. then tightened his grip on Jane, shoved his hands down her pants and under her underwear, and digitally penetrated Jane's vagina.  Jane tried to get away and was crying.  M.P. stopped his assault only when another student entered the band room.

### *Defendants Disregarded the Report of M.P.'s Sexual Violence against Jane Doe, Refused to Comply with a Civil No Contact Order, and Failed to Take Any Measure to Protect Jane Doe from Continued Harassment and Retaliation*

31.     Jane Doe was extremely distraught, did not want to attend school, and was terrified of going to the class she had that was taught by M.P.'s parent.

32.     Jane Doe's mother was very concerned about her daughter.  Jane confided in her mother that M.P. had violently penetrated her in the MSHS band room.

33.     The next day, Jane's mother contacted law enforcement and MSHS, and reported M.P.'s sexual violence against her daughter.  Jane and her mother also went to MSHS, where they met with law enforcement, Defendants Rumley and Fulkerson, and the school counselor, and they provided reports to law enforcement and the school.

34.     In the following weeks, Defendants still did not investigate the reports regarding M.P.'s harassment and assault against Jane Doe, did not interview Jane Doe, did not discipline M.P., and did nothing to protect Jane from M.P., while they allowed M.P. to attend MSHS without any restrictions.  Defendants did not provide any written memorialization to Jane Doe or her mother regarding their many reports of M.P.'s sexual harassment.

35.     During those same weeks, M.P. verbally harassed and continued to try to touch Jane Doe, and warned her that she should not tell anyone.  Jane was terrified to attend school.

36.     Jane Doe and her mother, left on their own to ensure Jane's safety with no help from Defendants, obtained a civil no contact order against M.P.

37.     Jane Doe's mother met with Defendant Fulkerson and provided him with a copy of the no contact order.

38.     Defendant Fulkerson laughed at Jane's mother, threw the no contact order down, stated he would not follow the order, and proclaimed his school was not under any obligation to adhere to such orders.  Fulkerson asked Jane's mother how she intended to keep her daughter safe, claimed the situation was Jane's "fault," and stated he would not disrupt his school for "girls that accuse people of things."

39.     On May 12, 2014, Jane's mother spoke with Superintendent Patrick Twomey and informed him of what Fulkerson had told her.  Twomey instructed her to return to MSHS so arrangements could be made for the school to comply with the no contact order.

40.     Jane's mother then met with Defendant Rumley.  Rumley stated he would not disrupt M.P.'s schedule, and that Jane would be pulled out of classes she shared with M.P.  He also stated that Jane could no longer attend the after school assistance program in which M.P. was also enrolled.

41.    M.P.'s parent, who taught one of Jane's classes, began giving Jane failing grades in retaliation for her reporting M.P.'s sexual assault and harassment.  M.P.'s parent also openly gossiped to other teachers regarding Jane and her complaints against M.P.  Jane had to transfer to a lower level math class to escape the retaliation and harassment from M.P.'s parent.

42.    On May 19, 2014, Jane Doe's mother reported to Superintendent Twomey that M.P.'s parent was harassing and retaliating against Jane.  Twomey refused to do anything to stop the teacher's retaliation and misconduct.

43.    Jane finished the remaining weeks of school at MSHS, where she continued to see M.P. at least two to three times per week and suffered continued harassment from School Defendants' employees and students, who told her she "got what she deserved," and "boys will be boys."

44.    Defendants did not offer Jane Doe any counseling or other services to remediate the harassment and hostility she suffered at MSHS.

### *Jane Doe Transferred to a Different School and Her Family Moved Away from Macomb*

45.    Jane, knowing that School Defendants would not take actions to protect her at MSHS, withdrew from MSHS and enrolled at the "alternative" school, the Academy of Secondary Education ("ASE"), for the 2014-2015 academic year, in order to escape the hostile and discriminatory environment at MHS.

46.    At ASE, all of Jane's classes were on-line video courses, without live classroom interaction with a teacher or other students.  ASE did not offer extracurricular activities and had a more limited class selection than MSHS.

47.    By Jane Doe's junior year, she and her mother moved out of Macomb, in order to escape the unbearable abuse and harassment of the school and community.

48.     Jane Doe has no trust in schools, has been in counseling, has a difficult time socializing, rarely leaves her home, has panic attacks in social situations, and has been hospitalized due to the anxiety and depression she suffered from Defendants' discrimination against her and failure to protect her.

### *M.P. Twice Sexually Assaulted and Battered Jane Roe in Fall 2016*

49.     In fall 2016, Jane Roe was 14-years-old, and she began the academic year as a freshman at MSHS.  Jane Roe enjoyed school and was active in extracurricular activities, including the one-act school play, anime club, and youth group.  She was looking forward to trying out for the winter play.

50.     Jane Roe had a Section 504 Student Accommodation Plan that provided school accommodations for her depression and anxiety.

51.     In fall 2016, M.P. was 17-years-old and a senior at MHS.  He was the president of a club in which Jane Roe participated.

52.     On September 20, 2016, Jane Roe stayed after school for one-act play practice.  When practice ended, she encountered M.P.  He offered to show Jane, who was new to MSHS, around the school building.

53.     M.P. took Jane Roe to the MSHS auto shop classroom.  M.P. pushed Jane Roe up against a car, shoved his hands down her pants, and digitally penetrated her.  Jane Roe pushed M.P. away and told him to stop.  M.P. stopped, and he instructed Jane Roe not to tell anyone about the assault.

54.     After the assault, Jane Roe messaged a friend on Facebook and reported to her that M.P. took her to the workshop, kissed her, started to "finger" her, and she was "freaking out cuz I feel gross."

55.     M.P. told Jane Roe that he wanted to be her "friend with benefits" until he turned 18, apparently under the mistaken belief that his assault, battery, and abuse against Jane Roe could not be considered criminal misconduct until he turned 18.

56.     On Monday, October 10, 2016, M.P. again sexually assaulted Jane Roe. Jane and a friend were in downtown Macomb, and they encountered M.P. Jane's friend left to go home, and Jane believed she was safe because she and M.P. were in a public park. M.P. then attempted to kiss Jane, groped her breasts, touched her thighs, and held her by the neck and would not let her go. Jane Roe was terrified, and pleaded with M.P. to stop. M.P. finally released her, and he told her not to tell anyone. The assault was captured on video footage from a local bank. Jane Roe went to the Macomb library.

57.     Jane Roe messaged two friends on Facebook and told them about the assault. She wrote:

> "Me [, another female student,] and [M.P.] were hanging out and [female student] had to leave so it was just me and [M.P.] and he kissed me and was feeling me up and wouldn't let me pull away and kept trying to get me to do more and I thought we'd be okay cuz we're in public and . . . I'm shaking really badly and about to cry because I feel so violated and I don't wanna go near him ever again."

> "I'm frozen [a]nd scared but he left so I should be fine but my mouth feels disgusting and my body feels violated."

58.     One friend responded, encouraged her to report to Defendant Fulkerson, and wrote, "I'm not letting [M.P.] get away with it again . . . He hurt my sister . . ."

59.     Jane Roe asked her mother to pick her up. Jane told her mother about M.P.'s sexual harassment and violence against her.

60.     M.P. text messaged Jane Roe, and she wrote, "I wasn't comfortable with what was happening earlier. I was trying to get you to stop and you wouldn't." M.P. responded, "Sorry. That was stupid of me." Jane Roe responded, "I didn't want you to do that and I feel

really weird about it and feel really violated." M.P. wrote, "I should have stopped. I know. I'm an idiot."

### *Defendants Disregarded the Report of M.P.'s Sexual Violence against Jane Roe, and Placed the Entire Onus on Jane and Her Mother to Prevent Further Harassment*

61.     On Tuesday, October 11, 2016, Julie Roe reported to Defendant Rumley and MSHS counselor Susan Conlon that M.P. had sexually assaulted Jane Roe, including in the school auto shop and the park. Julie and Jane Roe also reported the sexual assaults to law enforcement. Detective Denise Cremer was assigned to the criminal investigation.

62.     Defendants took no immediate action to protect Jane from M.P. Jane Roe was afraid of encountering M.P. and feared for her safety, and she did not go to school for the remainder of the week.

63.     On October 14, 2016, Julie Roe, at the advice of law enforcement, obtained an emergency civil no contact order for Jane Roe against M.P. The order prohibited M.P. from, among other things, entering or remaining at MSHS while Jane Roe was there.

64.     That same day, Julie Roe requested a meeting with Defendant Fulkerson. At the meeting, Julie provided Fulkerson with a copy of the no contact order. Fulkerson commented, "we deal with these all the time," and he rolled his eyes as Julie reported her concerns about Jane's safety. He stated the school would not follow the order, as M.P. had the right to attend MSHS. Fulkerson told Julie she should keep Jane Roe at home while M.P. was at school. Assistant Principal Tera Twitchell joined the meeting, and she advocated for M.P., stating, "I know this boy very well and he is not the type of kid to be running around the school during class periods."

65.    On October 17, 2016, Julie Roe obtained a modification to the original no contact order. The modified order specifically stated that M.P. could not attend MSHS, and that he should be immediately transferred to an alternate school.

66.    That same day, Julie Roe, her mother and father who are both retired principals, Defendant Fulkerson, Assistant Principal Twitchell, School Resource Officer J.P. McLaughlin, and Detective Cremer met at MSHS to discuss a safety plan and educational support for Jane Doe. Julie provided the school with the modified Order. School personnel stated they were "looking into" the order, but they were sure M.P. would be back in the school within two weeks.

67.    School personnel stated they would not require M.P. to change his schedule or otherwise restrict his activities in the school. Their "safety plan" was to require Jane Roe to change her schedule and eat lunch in a different location than where she usually had lunch, and for her to wait in each classroom for five minutes after the bell rang before heading to a new class, so she could hopefully avoid encountering M.P. in the hallways.

68.    Julie Roe reminded school personnel of Jane Roe's Section 504 plan, and stated any disruption in Jane's routine and schedule would be contrary to the plan and cause Jane stress and anxiety. School personnel disregarded Julie's concern.

69.    Julie Roe and her father asked Defendant Fulkerson whether M.P. would be disciplined. Fulkerson stated, if they disciplined M.P., then they would also discipline Jane Roe.

70.    School Resource Officer McLaughlin downplayed M.P.'s abuse and harassment against Jane Roe and stated, "I've seen way worse victims than this."

71.    Defendant Fulkerson also discounted the report of M.P.'s sexual assault against Jane Roe in the MSHS auto shop. Fulkerson stated he had looked at video footage from

September 20, 2016, and he concluded, "[Jane Doe] was not in any way forced into the room" and "they were only in the room for 2 minutes and a few seconds."

72.     One of Jane Roe's teachers was M.P.'s parent.  Julie Roe expressed concern about potential retaliation and her daughter's emotional and educational well-being if she remained in M.P.'s parent's class. The school's answer was to suggest Jane Roe take an online algebra course paid for by Julie Roe.

73.     Defendants conducted no formal investigation of M.P.'s sexual harassment against Jane Roe, other than Defendant Fulkerson's supposed review of video footage from outside of the auto shop.  Based upon information and belief, Defendants also did not review video footage of M.P.'s sexual assault against Jane Roe at the park.  Defendants did not conduct interviews with Jane Roe, M.P., or any other students, and they did not issue any written findings or provide anything in writing to Jane or her mother that memorialized their complaint against M.P.

*Jane Roe Transferred Out of MSHS to ASE, and Defendants Refused to Allow Her to Return to MSHS or Participate in MSHS Extracurricular Activities*

74.     On October 18, 2016, Jane Roe attempted to return to school.  She attended classes on October 18 and 19, 2016.

75.     On October 20, 2016, Jane experienced a panic attack because of her fear of encountering M.P. and being subjected to further harassment.  Jane went to see a guidance counselor, who told her to return to class.  Jane sought out additional help, and spent the rest of her day in Conlon's office.  Julie Roe had to arrange for a counselor from the Western Illinois Regional Council to travel to the school and assist Jane Roe at school that day.

76.     Defendants offered no psychological counseling or other supportive resources to Jane Roe to remediate the hostile environment and harassment she suffered.

14

77.     Jane and Julie Roe, knowing that Defendants would take no action to protect Jane from M.P., who she was terrified to encounter at MSHS, and that Defendants required Jane to alter her schedule and classes and limit her activities at school – while M.P. would be free to roam the school, take classes, and engage in school activities without restriction or alteration to his schedule – decided to transfer Jane to the "alternative" school, ASE, for the short term so that Jane could be in a safer and more secure educational environment.

78.     On October 21, 2016, Julie Roe informed Defendant Rumley that Jane was transferring to ASE for a short period of time, and no longer than the remainder of the semester.

79.     Defendant Rumley told Julie Roe that *she* should seek a change to the no contact order so that M.P., her daughter's assailant, could return to MSHS.

80.     Defendants allowed M.P. to return to MSHS without restrictions, consequences, or any disciplinary action.

81.     On November 1, 2016, at a hearing on Jane Roe's no contact order against M.P., Defendant Rumley appeared to testify on M.P.'s behalf.

82.     On or about November 29, 2016, the McDonough County State's Attorney's Office filed juvenile criminal sexual abuse charges against M.P. for his September 20 and October 10, 2016 assaults against Jane Roe. Based upon information and belief, Defendants were made aware of the criminal charges.

83.     At ASE, Jane was able to take only on-line recorded video classes, without live interaction with a teacher or other students. ASE does not offer any Section 504 accommodations for Jane's depression and anxiety. ASE does not offer any extracurricular activities or clubs, and its course selection is more limited than that at MSHS.

84.      In mid-December 2016, Julie Roe requested that her daughter be allowed to transfer back to MSHS.  Counselor Conlon stated MSHS did not want to "upset the apple cart," and that Jane was not permitted to transfer back.

85.      Defendants did not permit Jane Roe to transfer back to MSHS for the 2017-2018 academic year, and Defendant Rumley denied Julie Roe's request that Jane be allowed to participate in extracurricular activities at MSHS.  Jane Roe currently attends ASE.

86.      During summer 2017, M.P. agreed to serve a period of time in a juvenile detention facility and issue an apology letter to Jane Roe in return for dismissal of the criminal case against him.  Based upon information and belief, the State's Attorney and M.P. entered into this agreement so that M.P. could enter the military after graduation from MSHS.  Based upon information and belief, M.P. was in the military for approximately one week before he was discharged due to misconduct.

87.      Julie Roe, at a hearing on the criminal proceedings against M.P., read her impact statement, and stated:

> "As a mother, my heart was broken as I have watched my daughter wither and become a stranger.  I've watched the curiosity and wonder leave her eyes.  I have seen her smile fade.  I have watched her fall into a hole of sadness that I cannot pull her from.  While I watched her disappear, you, [M.P.], have continued your life with little interruption.  You participated in the school clubs, went to the school dances and extracurricular activities, you graduated and walked at the ceremony to receive your diploma.  All those things she has been deprived of, you have continued to enjoy.  You have continued to benefit while she has been denied the same opportunities."

88.      Jane Roe has had panic attacks, been in counseling, and was hospitalized due to the anxiety and depression she suffered from Defendants' discrimination against her and failure to protect her.

### *School Defendants Failed to Provide Essential Title IX and Sexual Harassment Training to Administrators, Staff, Students, and Students' Parents*

89.     In 1998, the U.S. Supreme Court stated, "[t]he number of reported cases involving sexual harassment of students in schools confirms that harassment unfortunately is an all too common aspect of the educational experience." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 292 (1998).

90.     In 1999, the U.S. Supreme Court determined that schools may be held liable in private Title IX actions for monetary damages when they are deliberately indifferent to student-against-student sexual misconduct and harassment. *See Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629 (1999). The Court stated deliberate indifference may be shown when a school makes no effort to investigate or put an end to student-against-student sexual harassment. *Id.* at 654.

91.     In January 2001, the U.S. Department of Education Office for Civil Rights ("OCR") issued *Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties* ("2001 OCR Guidance"), informing all U.S. schools receiving Federal financial assistance, including School Defendants, that "[p]reventing and remedying sexual harassment in schools is essential to ensuring a safe environment in which students can learn." OCR reminded schools that student-against-student sexual misconduct constitutes prohibited sexual harassment. OCR also stated:

> "[S]chools need to ensure that employees are ***trained*** so that those with authority to address harassment know how to respond appropriately, and other responsible employees know that they are obligated to report harassment to appropriate school officials. ***Training for employees should include practical information about how to identify harassment and, as applicable, the person to whom it should be reported***."

92.     The 2001 OCR Guidance stated, with respect to student-against-student sexual harassment:

"If a student sexually harasses another student and the harassing conduct is sufficiently serious to deny or limit the student's ability to participate in or benefit from the program, and if the school knows . . . about the harassment, the school is responsible for taking immediate effective action to eliminate the hostile environment and prevent its recurrence. . . . [I]f, upon notice, the school fails to take prompt, effective action, the school's own inaction has permitted the student to be subjected to a hostile environment that denies or limits the student's ability to participate in or benefit from the school's program on the basis of sex."

93.     In January 2006, OCR issued *Dear Colleague Letter – Sexual Harassment Issues*, to U.S. public schools, including School Defendants, stating, "*[u]nfortunately, a significant number of students are still subjected to sexual harassment, which can interfere with a student's education as well as his or her emotional and physical well-being*."  OCR reminded public schools of their obligation "to take immediate and effective steps to end sexual harassment when it occurs, prevent its recurrence, and remedy its effects."

94.     In September 2008, OCR issued *Sexual Harassment: It's Not Academic*, reiterating that unwelcome student-against-student sexual touching is sexual harassment, and that sexual harassment includes rape, sexual assault, dating violence, and sexually motivated stalking.

95.     On April 4, 2011, OCR sent *Dear Colleague Letter: Sexual Violence* ("2011 OCR Guidance"), to all U.S. public schools, including School Defendants, that issued a "*call to action*" to the nation's schools because of "deeply troubling" data regarding school-place sexual violence.  OCR informed schools, "*[d]uring the 2007-2008 school year, there were 800 reported incidents of rape and attempted rape and 3,800 reported incidents of other sexual batteries at public high schools*."  The Guidance stated, "[a] number of different acts fall into the category of sexual violence, including rape, sexual assault, sexual battery, and sexual coercion. All such acts of sexual violence are forms of sexual harassment covered under Title IX."

96.     The 2011 OCR Guidance reminded schools they have an obligation to investigate reports of sexual harassment, must designate at least one employee to coordinate and comply

with Title IX responsibilities, and recommended schools provide ***training and education*** to

employees and students on sexual harassment and violence.[2]

97.     On April 24, 2013, OCR sent *Dear Colleague Letter: Retaliation*, to all U.S.

public schools, including School Defendants, reminding them they may not retaliate against

students or parents who complain to a school about a civil rights violation like sexual

discrimination.

98.     On April 24, 2015, OCR sent *Dear Colleague Letter: Title IX Coordinators*, and

issued a *Title IX Resource Guide*, to all U.S. public schools, including School Defendants.  OCR

reminded schools of their obligation to designate at least one employee as a Title IX Coordinator

who is responsible for coordinating the school's efforts to comply with and carry out the school's

Title IX responsibilities, pursuant to 34 C.F.R. §106.8(a).  OCR stated, "In our enforcement

work, OCR has found that some of the most egregious and harmful Title IX violations occur

when a recipient fails to designate a Title IX coordinator or when a Title IX coordinator has not

been sufficiently trained or given the appropriate level of authority to oversee the recipient's

compliance with Title IX."

99.     Based upon information and belief, despite clear notice by the U.S. Supreme

Court and OCR regarding School Defendants' obligations to prevent and remediate the effects of

sexual harassment, at all times relevant hereto School Defendants failed to provide training or

education to administrators, staff, students, and parents regarding Title IX, student-against-

student sexual harassment, or retaliation against students who report sexual harassment.

---

[2] The U.S. Department of Education withdrew this Dear Colleague Letter on September 22,
2017.  However, the statistics cited above have not changed, and the requirements set forth above
have not been formally revised or otherwise superseded by the U.S. Department of Education.

100.    Based upon information and belief, School Defendants, at all times relevant hereto, failed to provide training or education to administrators, staff, students, and parents on protecting students from sexual harassment and violence, interviewing victims and potential witnesses of sexual harassment, investigating reports of sexual harassment, remediating sexual harassment and violence, proper reporting of suspected sexual harassment or violence to School Defendants' employees, and prohibition on retaliating against students who report sexual harassment.

101.    At all times relevant hereto, School Defendants, based upon information and belief, had no Title IX coordinator or other employees designated to handle complaints of sexual harassment who were adequately trained in receiving, coordinating or investigating reports of sexual harassment and discrimination against students.

102.    At all times relevant hereto, School Defendants' officially adopted sexual harassment policies were inequitable and inadequate with respect to investigating and properly responding to reports of student-against-student sexual harassment, and, in any event, based upon information and belief, School Defendants failed to provide training or education on those policies to administrators, staff, students, and parents.

**COUNT I**
**Violation of the Educational Amendments of 1972 (Title IX), 20 U.S.C. § 1681, *et seq.***
**(*Against School Defendants*)**
**As to Jane Doe, Post-First Report of Sexual Harassment**

103.    Plaintiffs incorporate all preceding paragraphs into this Count by reference as though fully stated herein.

104.    No later than March or April 2014, School Defendants had actual knowledge of M.P.'s sexual harassment and unwelcomed inappropriate touching against Jane Doe.  Jane Doe

20

and her mother both made additional reports of M.P.'s sexual harassment, assault, battery, and violence against Jane Doe in March and April 2014.

105.     Jane Doe suffered repeated student-against-student sexual assault and harassment, which is considered sex discrimination prohibited by Title IX.

106.     The individuals with actual knowledge, including Defendants Rumley and Fulkerson, had the authority and ability to investigate and take meaningful corrective action to end or prevent M.P.'s repeat sexual harassment, assaults, and violence against Jane Doe, but failed to do so.

107.     School Defendants' failures to investigate Jane Does' and her mother's multiple reports or take any corrective action against M.P. were clearly unreasonable in light of the known circumstances.

108.     Through their actions and inaction School Defendants were deliberately indifferent to the sexual harassment, assault, and violence that Jane Doe suffered at MSHS, and proximately caused injury to Jane Doe.

109.     Through their actions and inaction School Defendants created a climate in which sexual misconduct was tolerated, thus encouraging M.P.'s repeated sexual misconduct against Jane Doe, and proximately caused additional injury to Jane Doe.

110.     As a result of School Defendants' deliberate indifference, Jane Doe was subjected to additional sexual harassment, assault, and violence by M.P.

111.     The sexual harassment, assaults, and violence M.P. inflicted on Jane Doe were severe, pervasive, and objectively offensive, and effectively barred Jane Doe's access to educational opportunities and benefits.

112.    The sexual harassment, assaults, and violence M.P. inflicted on Jane Doe, along with School Defendants' refusal to investigate or take any action in response to reports of M.P.'s sexual misconduct against Jane Doe, effectively barred Jane Doe's access to educational opportunities and benefits.   Jane Doe had to leave MSHS and transfer to the alternative high school in Macomb, where she was deprived of the benefit of interacting with peers and teachers in live classrooms, had a more limited class selection, and could not take or participate in any extracurricular activities.

113.    By their actions and inaction School Defendants acted with deliberate indifference toward the right of Jane Doe to a safe and secure education environment, thus materially impairing Jane Doe's ability to pursue her education at MSHS in violation of the requirements of Title IX.

114.    Specifically, School Defendants violated Title IX by, *inter alia*:

  a.    Choosing to take no action to protect Jane Doe, despite knowledge of a need to supervise, discipline, warn, or take other corrective action to prevent M.P.'s further harassment, assaults, and violence against Jane Doe;

  b.    Choosing to take no action against M.P. to discipline or increase supervision of him;

  c.    Ignoring complaints and reports regarding M.P.'s sexual harassment, assaults, and violence against Jane Doe, or were deliberately indifferent thereto;

  d.    Failing to conduct their own investigation into reports of M.P.'s sexual misconduct;

  e.    Requiring Jane Doe to protect herself from further sexual harassment, assault, and violence from M.P., with no assistance from School Defendants;

  f.    Protecting and advocating for M.P., despite multiple reports of his sexual harassment, assaults, and violence against Jane Doe;

  g.    Creating a climate that tolerated sexual harassment, assault, violence, and other misconduct, and that tolerated the complete disregard of reports of sexual misconduct by M.P., or were deliberately indifferent thereto;

h.    Failing to develop or adopt policies and procedures to properly address complaints of student-against-student sexual harassment, assault, and violence;

i.    Failing to develop or adopt policies and procedures regarding prompt and equitable grievance procedures and investigation of reports of student-against-student sexual harassment, assault, and violence;

j.    Failing to provide policy, procedures, or training for administrators, employees, students, and students' parents about sexual harassment and assault;

k.    Failing to terminate or otherwise discipline School Defendants' employees and agents identified herein for their willful disregard to Jane Doe's safety and rights, or were deliberately indifferent thereto;

l.    Failing to provide, offer, recommend, or coordinate adequate health, psychological, counseling, and academic assistance and services to Jane Doe after she was sexually harassed, assaulted, and violated by M.P.; or being deliberately indifferent thereto; and

m.    Through other actions, inaction, and deliberate indifference.

115.    As a direct and proximate result of School Defendants' action, inaction, and deliberate indifference, Plaintiff Jane Doe sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

a.    Past, present, and future physical and psychological pain, suffering and impairment;

b.    Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

c.    Impaired educational capacity;

d.    Attorneys' fees and costs; and

e.    Such other and further relief as this Court deems just and proper.

**COUNT II**
**Violation of the Educational Amendments of 1972 (Title IX), 20 U.S.C. § 1681, *et seq.***
***(Against School Defendants)***
**As to Jane Roe, Pre- and Post-Report**

116.     Plaintiffs incorporate all preceding paragraphs into this Count by reference as though fully stated herein.

117.     School Defendants had actual knowledge of Jane Doe's and her mother's many reports of M.P.'s sexually inappropriate touching, sexual harassment, and sexual violence against Jane Doe, and the substantial risk M.P. posed of sexually harassing and abusing other female students, including Jane Roe.

118.     The individuals with actual knowledge, including Defendants Rumley and Fulkerson, had the authority and ability to investigate and take meaningful corrective action to end or prevent M.P.'s repeat sexual harassment, assaults, and violence against female students, including Jane Roe, but failed to do so.

119.     School Defendants' failure to investigate Jane Doe's and her mother's multiple reports or take any corrective action against M.P. created a climate in which M.P.'s sexual misconduct was tolerated, thus encouraging M.P.'s sexual harassment, assaults, and violence against Jane Roe, and proximately caused injury to Jane Roe.

120.     School Defendants had actual knowledge that M.P. reportedly sexually harassed and assaulted Jane Doe, and that he posed a substantial risk of sexually harassing and abusing other students, but they took no action to protect other female students from M.P., and proximately caused injury to Jane Roe.

121.     As a result of School Defendants' deliberate indifference, Jane Roe was subjected to sexual harassment, assault, and violence by M.P.

122.    The sexual harassment, assaults, and violence M.P. inflicted on Jane Roe were severe, pervasive, and objectively offensive, and effectively barred Jane Roe's access to educational opportunities and benefits.

123.    School Defendants' failures to investigate Jane and Julie Roe's report of M.P.'s sexual violence against Jane Roe, or take any meaningful corrective action against M.P., were clearly unreasonable in light of the known circumstances.

124.    School Defendants had an obligation under Title IX to address sexual violence that creates a hostile environment at school, even if perpetrated outside of the school's grounds.

125.    The sexual harassment, assaults, and violence M.P. inflicted on Jane Roe, along with School Defendants' refusal to investigate or take any action in response to reports of M.P.'s sexual misconduct against Jane Roe, effectively barred Jane Roe's access to educational opportunities and benefits.   Jane Roe had to leave MSHS and transfer to the alternative school in Macomb, where she was deprived of the benefit of interacting with peers and teachers in live classrooms, had a more limited class selection, could not take participate in any extracurricular activities, and had no Section 504 accommodations.  Defendants refused to allow Jane Roe to return to MSHS or to even participate in extracurricular activities at MSHS.

126.    By their actions and inactions, School Defendants acted with deliberate indifference toward the right of Jane Roe to a safe and secure education environment, thus materially impairing Jane Roe's ability to pursue her education at MSHS in violation of the requirements of Title IX.

127.    Specifically, School Defendants violated Title IX by, *inter alia*:

    a.    Ignoring complaints and reports regarding M.P.'s sexual harassment, assaults, and violence against Jane Doe, or were deliberately indifferent thereto;

25

b.     Choosing to take no action against M.P. to discipline or increase supervision of him after receiving Jane Doe's and her mother's multiple reports of M.P.'s sexual harassment, assaults, and violence;

c.     Failing to protect female students like Jane Roe from the known substantial risk M.P. posed of sexually harassing and abusing her;

d.     Failing to conduct their own investigation into reports of M.P.'s sexual harassment, violence and assaults against Jane Roe;

e.     Requiring Jane Roe to protect herself from further sexual harassment, assault, and violence from M.P., with no assistance from School Defendants;

f.     Protecting and advocating for M.P., despite multiple reports of his sexual harassment, assaults, and violence against Jane Doe and Jane Roe;

g.     Creating a climate that tolerated sexual harassment, assault, violence, and other misconduct, and that tolerated the complete disregard of reports of sexual misconduct by M.P., or were deliberately indifferent thereto;

h.     Failing to develop or adopt policies and procedures to properly address complaints of student-against-student sexual harassment, assault, and violence;

i.     Failing to develop or adopt policies and procedures regarding prompt and equitable grievance procedures and investigation of reports of student-against-student sexual harassment, assault, and violence;

j.     Failing to provide policy, procedures, or training for administrators, employees, students, and students' parents about sexual harassment and assault;

k.     Failing to terminate or otherwise discipline School Defendants' employees and agents identified herein for their willful disregard to Jane Roe's safety and rights, or were deliberately indifferent thereto;

l.     Failing to provide, offer, recommend, or coordinate adequate health, psychological, counseling, and academic assistance and services to Jane Roe after she was sexually harassed, assaulted, and violated by M.P.; or being deliberately indifferent thereto;

m.     Refusing to allow Jane Roe to return to MSHS or participate in extracurricular activities at MSHS; and

n.     Through other actions, inaction, and deliberate indifference.

128.    As a direct and proximate result of School Defendants' action, inaction, and deliberate indifference, Plaintiff Jane Roe sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

      a.    Past, present, and future physical and psychological pain, suffering and impairment;

      b.    Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

      c.    Impaired educational capacity;

      d.    Attorneys' fees and costs; and

      e.    Such other and further relief as this Court deems just and proper.

**COUNT III**
**Violation of the Educational Amendments of 1972 (Title IX), 20 U.S.C. § 1681, *et seq.***
***Retaliation***
**(*Against School Defendants*)**
**As to Jane Doe**

129.    Plaintiffs incorporate all preceding paragraphs into this Count by reference as though fully stated herein.

130.    Reporting sexual assault and harassment to school officials is a statutorily protected activity under Title IX.  Reporting incidents of sexual discrimination is integral to Title IX enforcement.

131.    Because Jane Doe reported M.P.'s sexual harassment to School Defendants, M.P.'s parent, an employee at and agent of School Defendants, retaliated against Jane by openly gossiping about her to other teachers, in front of Jane, and giving her failing grades.

132.    On May 12, 2014, Jane Doe's mother reported this to Superintendent Twomey, an agent of School Defendants, who permitted the retaliation to continue.

133.     School Defendants, through their agents, acted materially adverse against Jane
Doe in that they negatively impacted her grades, deprived her of educational opportunities and
benefits, and subjected her to a hostile education environment.

134.     As a direct and proximate result of School Defendants' retaliation, Plaintiff Jane
Doe sustained and continues to sustain injuries for which she is entitled to be compensated,
including but not limited to:

     a.     Past, present, and future physical and psychological pain, suffering and impairment;

     b.     Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

     c.     Impaired educational capacity;

     d.     Attorneys' fees and costs; and

     e.     Such other and further relief as this Court deems just and proper.

**COUNT IV**
**Violation of the Educational Amendments of 1972 (Title IX), 20 U.S.C. § 1681, *et seq.***
***Retaliation***
**(*Against School Defendants*)**
**As to Jane Roe**

135.     Plaintiffs incorporate all preceding paragraphs into this Count by reference as
though fully stated herein.

136.     Reporting sexual assault and harassment to school officials is a statutorily
protected activity under Title IX.  Reporting incidents of sexual discrimination is integral to Title
IX enforcement.

137.     Because Jane Roe reported M.P.'s sexual harassment, assaults, and violence, to
School Defendants through its agents, Defendants Rumley and Fulkerson, they retaliated against
Jane when they refused to allow her to return from ASE to MSHS, and denied her request to
attend and participate in extracurricular activities at MSHS.

138.    School Defendants' actions were materially adverse against Jane Roe in that they excluded her from MSHS programs and activities unavailable at ASE, deprived her of educational opportunities and benefits, and deprived her of Section 504 accommodations.

139.    As a direct and proximate result of Defendant School District's and School Board's retaliation, Plaintiff Jane Roe sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

   a.    Past, present, and future physical and psychological pain, suffering and impairment;

   b.    Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

   c.    Impaired educational capacity;

   d.    Attorneys' fees and costs; and

   e.    Such other and further relief as this Court deems just and proper.

**COUNT V**
**Violation of Plaintiffs' Constitutional and Federal Rights, brought under 42 U.S.C. § 1983**
**Failure to Train**
(*Against School Defendants*)
**As to Jane Roe and Jane Doe**

140.    Plaintiffs incorporate all preceding paragraphs into this Count by reference as though fully stated herein.

141.    Sexual harassment is a form of unlawful sex discrimination that can violate the Equal Protection Clause of the 14th Amendment to the U.S. Constitution.  Plaintiffs' Equal Protection rights were violated when they suffered sexual harassment and discrimination at MSHS.

142.    Plaintiffs had federal civil rights secured by federal statute, Title IX of the Education Amendments of 1972, which provides in pertinent part:

> [N]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

143.    Title IX was intended to benefit students like Plaintiffs.

144.    Title IX provides students like Plaintiffs clear civil rights, which are not amorphous or vague, to be free from known sexual discrimination at school.

145.    Title IX imposes a binding mandatory obligation on schools like School Defendants that are recipients of federal funding that prohibits them from discriminating against students on the basis of sex.

146.    The U.S. Supreme Court, in *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 255-58 (2009), stated, "we conclude that Title IX was not meant to be an exclusive mechanism for addressing gender discrimination in schools," and held a plaintiff may bring causes of action under *both* Title IX *and* § 1983 for unlawful sex discrimination.  Accordingly, a remedy for sex discrimination in schools is not foreclosed under §1983.

147.    At all times relevant hereto, School Defendants were policy makers and administrators who had a duty to train, and failed to train, administrators, staff, students, and parents concerning sexual discrimination and harassment against students, Title IX and/or student-against-student sexual misconduct and identifying, investigating, reporting, and stopping sexual harassment by students like M.P. against students like Jane Doe and Jane Roe.

148.    At all times relevant hereto, School Defendants were policy makers and administrators who had a duty to train, and failed to train, administrators, staff, students, and parents regarding any school policies concerning sexual discrimination and harassment against students, Title IX and/or student-against-student sexual misconduct and identifying, investigating, reporting, and stopping sexual harassment by students like M.P. against students like Jane Doe and Jane Roe.

149.    School Defendants failed to train administrators, staff, students and parents despite the plainly obvious need for training on, among other things, student-against-student sexual misconduct and identifying, investigating, reporting, and stopping sexual harassment like that engaged in by M.P.

150.    Numerous authorities, including the U.S. Supreme Court and U.S. Department of Education, made clear to School Defendants that school employees will confront student sexual harassment and abuse with regularity, given the high predictability, recurrence and prevalence of student-against-student sexual assault and abuse in schools. It was inevitable that School Defendants' administrators and employees would encounter recurrent situations involving sexual abuse that implicated students' Constitutional and federal rights, and they did, in fact, encounter those recurring situations.

151.    Defendants failed to adequately train administrators, staff, students, and parents, and thereby prohibit or discourage readily foreseeable conduct, despite the clearly established and well known known dangers of sexual harassment, assault, battery, and violence faced by students in U.S. public schools, and thereby were deliberately indifferent.

152.    Defendants' failure to train administrators, staff, students, and parents effectively denied Plaintiffs' clearly established federal rights and Constitutional rights.

153.    School Defendants failed to train administrators, staff, students, and parents in deliberate, reckless, and callous indifference to Plaintiff's federally protected rights.

154.    As a direct and natural consequence of School Defendants' actions, inactions, and deliberate indifference to and violation of Plaintiffs' clearly established Constitutional and federal rights, Plaintiffs suffered, and continue to suffer, injuries including, without limitation, emotional distress, psychological trauma, and mortification.

31

155.    As a direct and proximate result of School Defendants' actions, inaction, deliberate indifference to, and violation of Plaintiffs' clearly established Constitutional and federal rights, Plaintiffs sustained and continue to sustain injuries for which they are entitled to be compensated, including but not limited to:

      a.    Past, present, and future physical and psychological pain, suffering and impairment;

      b.    Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

      c.    Impaired educational capacity;

      d.    Attorneys' fees and costs; and

      e.    Such other and further relief as this Court deems just and proper.

**COUNT VI**
**Willful and Wanton Misconduct Under Illinois State Law**
*(Against Individual Defendants Rumley and Fulkerson)*
**As to Jane Doe and Jane Roe**

156.    Plaintiffs incorporate all preceding paragraphs into this Count by reference as though fully stated herein

157.    M.P. was a student at MSHS and was subject to Defendants Rumley and Fulkerson's authority.

158.    Defendants Rumley and Fulkerson possessed unique knowledge that M.P. posed a particular threat to student Jane Doe and all female students, including Jane Roe, and thereby had a duty to protect Jane Doe and Jane Roe from M.P.'s sexual harassment, assault, battery, and violence.

159.    Defendants Rumley and Fulkerson, after learning of M.P.'s sexual harassment, battery, and assault against Jane Doe, did nothing to discipline M.P., supervise his activities on school property, or prevent his continued sexual misconduct against Jane Doe and female

students, including Jane Roe, and thereby breached their duties by acting with utter indifference to and conscious disregard for the welfare, well-being, and safety of Jane Doe, Jane Roe, and all female students at MSHS.

160. As a direct and proximate result of Defendants Rumley and Fulkerson's breach of their duties to protect Jane Doe and Jane Roe from M.P.'s sexual harassment, assault, battery and violence, Plaintiffs Jane Doe and Jane Roe sustained and continue to sustain injuries for which they are entitled to be compensated, including but not limited to:

a. Past, present, and future physical and psychological pain, suffering and impairment;

b. Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

c. Impaired educational capacity;

d. Punitive damages as necessary and sufficient to deter Individual Defendants Rumley and Fulkerson from engaging in the same or similar behavior in the future; and

e. Such other and further relief as this Court deems just and proper.

## COUNT VII
### Premises Liability Under Illinois State Law
#### (*Against School Defendants*)
#### As to Jane Doe and Jane Roe

161. Plaintiffs incorporate all preceding paragraphs into this Count by reference as though fully stated herein.

162. School Defendants had a duty to exercise ordinary care to maintain school property in a reasonably safe condition for the use of people whom School Defendants intended and permitted to use the property, including students Jane Doe and Jane Roe.

163.    School Defendants had actual notice of the dangerous conditions on school premises at MSHS caused by M.P.'s sexual harassment, touching, batteries, and assaults against Jane Doe and Jane Roe.

164.    School Defendants possessed unique knowledge that M.P. posed a particular threat to student Jane Doe and all female students, including Jane Roe, and thereby had a duty to protect Jane Doe and Jane Roe from the dangerous conditions posed by M.P.'s sexual harassment, assault, battery, and violence at MSHS.

165.    School Defendants consciously disregarded the known dangerous conditions on school property at MSHS posed by student M.P. to Jane Doe and Jane Roe.

166.    As a direct and proximate result of School Defendants' conscious disregard of known dangerous conditions at MSHS, Plaintiffs Jane Doe and Jane Roe sustained and continue to sustain injuries for which they are entitled to be compensated, including but not limited to:

    a.    Past, present, and future physical and psychological pain, suffering and impairment;

    b.    Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

    c.    Impaired educational capacity; and

    d.    Such other and further relief as this Court deems just and proper.

## PRAYER FOR RELIEF

Plaintiffs prays the Court for judgment against Defendants, jointly and severally, for an amount of no less than $10,000,000.00 for compensatory and punitive damages, together with costs of this suit, legal interest, reasonable attorney's fees and such other relief as the Court may deem just and proper under the circumstances

## JURY DEMAND

Plaintiffs demand trial by jury.

Respectfully Submitted,
JANE DOE; and JANE ROE, by and through
her next friend, JULIE ROE, Plaintiffs


By:_____ s/ Jeff Green
JEFF GREEN, Attorney for Plaintiffs

Jeff Green #6275034
LAW OFFICE OF JEFF GREEN
316 SW Washington St. Unit 1A
Peoria Illinois 61602
Telephone 309-699-0111
Fax 309-699-4693
jgreen@jeffgreenlaw.com